IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.

2023 JUN 20 A 11: 03

CLERK____C.Cisbell____
SO. DIST. OF GA.

JOSE BURGOS-RODRIGUEZ                )
                                     )   CV223-076
                                     )
V                                    )
                                     )
                                     )
UNITED STATES OF AMERICA,            )
NURSE FNU DRURY, NURSE FNU GRIMES,   )
FNU/LNU MEDICAL STAFF ON DUTY ON     )
09/15/22 (DOE 1), 09/19 (DOE 2),     )

CIVIL COMPLAINT FOR DAMAGES PURSUANT TO THE FEDERAL TORT CLAIMS
ACT AND BIVENS V SIX UNKNOWN NAMED AGENTS OF THE FEDERAL
BUREAU OF NARCOTICS

Come Now, Jose Burgos Rodriguez (Plaintiff), proceeding Pro Se, to enter this Complaint For Damages against the United States of America under the Federal Tort Claims Act (FTCA) (28 USC § 2672et seq.; 1346et seq)for medical malpractice and negligence as defined in Georgia Statute and against the other defendants in thier individual capacities for deliberate indifference to a serious medical need under Bivens v Six Unknown Named Agents of the Federal Bureau of Narcotics,403 US 388 (1971) for the length of time taken to treat Plaintiff's broken bone(s) after an injruy had been confirmed, for losing the requisite and relevant medical documents to effectuate said treatment, and for interfering in his pursuit of administrative remedy through said actions based upon facts to be determined in trial by jury.
TO WIT:

1. Bureau of Prisons policy clearly outlines the timetables and procedure to follow concerning potentially and obviously broken bones - P5800.15 (902)(a) and P6027.02(3)(a), (3)(c). On Wednesday, September 14, 2022, Nurse Drury failed to follow this proceedure. Instead of sending Plaintiff to the local hospital for treatment, Nurse Drury merely wrapped the obviously broken bones in an ACE Bandage and prescribed ibuprophen before ordering Plaintiff to return to his housing unit.

1

2. The following day, Plaintiff was ignored by all medical staff at FSL Jesup as he presented in delerious pain and obvious suffering from his broken bones (FNU, LNU sick-call staff on 09-15-2022).

3. On 09-16-2022, Nurse Grimes compounded the injury by instructing Plaintiff to "keep moving the hand and elbow" surrounding the obviously broken bones.

4. FNU/LNU medical staff on 09-19-2022, despite the concern exhibited by Plaintiff's Unit Counselor Mr. McGowan and his attempts to assist Plaintiff in obtaining immediate treatment, advised only to "go to sick call" concerning Plaintiff's pain and suffering and obviously broken bones which by this time had been improperly healing for five days.

5. Due to the callous disregard for Plaintiff's serious medical need to obtain treatment for broken bones, invasive surgery became subsequently necessary to repair the improper healing which resulted in   further unnecessary time away from Plaintiff's UNICOR employment, further unnecessary pain and suffering, and further inability to access administrative remedy due to his deleterious mental state from said pain and sufferring.

6. On 09-19-2022, FNU/LNU staff member or members failed to maintain custody of the medical files/paperwork associated with theoutside hospital visit following sick call, resulting in further delay to Plaintiff's medical treatment for broken bones.

## COUNT 1

All previous paragraphs are incorporated here by reference. Plaintiff alleges that all Defendants carried a duty of care to treat him in a manner that comports with copetentcy regularly followed and which is outlined in Bureau of Prisons policy, that said duty was not followed, and that the failure to follow said duty proximately caused additional pain, suffering, and surgery. The United States is therefore liable under the FTCA. As Expert Witness Statements are unavailable to Pro Se Prisoners due to monetary contraints, and this is a Medical Malpractice Claim that requires Expert Witness Testimony in order to proceed -  Plaintiff requests appointment/recruitment of counsel for the Interests of Justice in this matter.

## COUNT 2

All previous paragraphs are incorporated here by reference. Medical Staff FNU/LNU on 09/15/2022, ignored Plaintiff's obvious suffering from the lack of treatment at that time of his obviously broken bones - this is a deliberate indifference and failure to protect claim.

## COUNT 3

All previous paragraphs are incorporated here by reference. Nurse Grimes, on 09/16/2022, despite Plaintiff's obviously broken bones which required immobilization as treatment which is well known as the proper treatment even to laypersons, instructed Plaintiff to "keep moving the hand and elbow" as treatment instead of the proper treatment, and instead of placing an obviously needed medical outside referral request. This is a deliberate indifference and failure to protect claim.

## COUNT 4

All previous paragraphs are incorporated here by reference. FNU/LNU medical staff on duty in the FSL Health Services Department ignored Counselor McGowan's concern for the egregious nature of the failure to treat Plaintiff's broken bones and failed to act in an appropriately urgent manner when informed of said previous failures, instructing instead to "go to sick call" which caused additional delay in treatment. This is a deliberate indifference and failure to protect claim.

## COUNT 5

All previous paragraphs are incorporated here by reference. FNU/LNU medical staff on 09/19/2022, after Plaintiff was finally sent to the local hospital for treatment of his broken bones, failed to maintain custody of the relevant medical files/paperwork associated with said hospital visit and treatment, resulting in yet more delays and failure to treat in accordance with established medical norms - alternatively, transportation staff FNU/ FNU failed to do the same. This is a deliberate indifference and Failure to protect claim.

3

MEMORANDUM OF LAW

## I. LEGAL STANDARDS

### A) FTCA Claims Against The United States

Under the FTCA, an action may be brought against the United States or its employees for any torts arising out of its actions "if a private person would be liable to the claimant" for any of the same conduct, and the claimant has exhausted administrative remedies - 28 USC § 2672, 2675(a); see also Barber v Veterans Admin. Hosp., 2013 US Dist LEXIS 191696 (N.D.Ga April 22, 2013). Plaintiff has exhausted administrative remedy on this issue through his filing of form 95-108 in case No.TRT-SER-2023-04363 (denied May 8, 2023).

To determine substantive liability in the underlying issue, the court will look to "the law of the place" where the conduct occurred - 28 USC § 2672, 1346(b)(1). See also Ochran v United States, 273 F.3d 1315, 1317 (11th Cir 2001) (describing that the source of substantive liability under the FTCA is the substantive law of the state).

In Georgia, a medical malpractice and medical negligence claim is governed by O.C.G.A § 9-11-9.1 (2007) and should consist of the following elements: 1) the duty inherent in the doctor/nurse-patient relationship; 2) the breach of that duty by failing to exercise the requisite degree of skill and care; and 3) that this failure is the proximate cause of the injury sustained - Hawkins v Greenberg, 166 Ga. App. 574, 575, 304 S.E.2d 922 (1983).

Alternatively, a negligence claim in Georgia must contain the following elements: 1) a legal duty to conform to standards of conduct; 2) a breach of this standard; 3) a legally attributable causal connection between the conduct and the resulting injury; and 4) some loss or damage - Fletcher v Water Applications Distributions Grp., Inc., 333 Ga. App. 693, 696, 773 S.E.2d 859 (2015). The loss here is extra time away from UNICOR employment, and the damage here is the unnecessary pain and suffering caused by the dalays in treatment.

Generally, the plaintiff is required to produce expert medical testimony to establish the applicable standard of care and a breach of that standard of care - Quiet Tech. DC-8 Inc. v Hurel-Dubois US Ltd., 326 F.3d 1333, 1348 (11th Cir 2003), but the Eleventh Circuit has noted that "appointment [ofan expert ] is especially appropriate where the evidence of testimony at issue is scientifically or technically complex" - Id. And "[w]here a party requests the appointment of an expert to aid in evaluating evidence that is relevant

4

to a central issue in the case, the court is obligated to fairly consider the request and to provide a reasoned explanation for this ultimate decision on the matter." - Id.

In accordance with the relevant standard as cited above and Rule 706 of the Fed. R. Civ. P., Plaintiff points now to the need for appointment of an expert witness for the purpose of establishing medical malpractice and/ or negligence under Georgia law and the FTCA and the accompanying Exhibits 2 (Inmate Request to Staff complaining of deficiant treatment), 3,4, and 5 (Injury reports filled out by UNICOR Supervisory Staff indicating that broken bones are part and parcel of the injury sustained).

Broken bones are "serious medical needs that require attention within hours" Melton v Abston, 841 F.3d 1207, 1222 (11th Cir 2016) (citing Harris v Coweta Cnty., 21 F.3d 388, 394 (11th Cir. 1994)); and Brown v Hughes, 894 F.2d 1533, 1538 (11th Cir 1990) (holding that a delay of six hours "in providing care for a serious and painful broken foot is sufficient to state a constitutional claim"). If a claim rises to the level of unconstitutional deliberate indifference for only six hours of non-treatment in a similar case, Plaintiff presents now that he has presented a Prima Facie case that Georgia law allows for a substantive claim for malpractice and negligence when the delay in treatment is 16 times as long as that already recognized.

B) Bivens Claims Against Individual Actors

To prevail on a claim of denial or delay in medical treatment, an inmate must show that the defendant acted with deliberate indifference to a serious medical need - Estelle v Gamble, 429 US 97 (1976). As explained above, this standard is met when medical staff delay treatment of broken bones by only six hours - Brown, 894 F.2d at 1538. In the individual case here, the delay was for nearly a week, which resulted in the need for corrective surgery to repair the improperly healed bones - which further delayed Plaintiff's return to work, impacting his earnings and ability to satisfy debts, which further injured his ability to convaleace due to resulting commissary restrictions.

Each defendant committed the same lack of care and treatment as described in Brown, yet did so accross a number of days and in support of each others' deliberate indiffierence, which also gives rise to the failure to protect claims.

5

C) Appointment of Counsel

Plaintiff also moves now for appointment of counsel. The appointment of counsel in a civil matter is a priviledge justified only in exceptional circumstances - Fowler v Jones, 899 F.2d 1088, 1096 (11th Cir 1990); Vickers v Georgia. 567 F. App'x 744, 749 (11th Cir 2014).

And when a Pro Se Plaintiff satisfies the relevant factors for appointment of an expert witness, so to should a district court appoint counsel as that is seen as staisfying the standard as cited above - see Kilgo v Ricks, 983 F.2d 189, 193 (11th Cir 1993) (Noting that "key is whether the pro se liti-gant needs help in presenting the essential merits of his or her position to the court"). Accordingly now, Plaintiff requests appointment of counsel.

CONCLUSION

For the foregoing reasons, I, Jose Burgos-Rodriguez, Plaintiff Pro Se, hereby pray for the relief of $50,000, or an amount to be determined at jury trial, plus attorney costs/expenses and swear under penalty of perjury that the foregoing is both true and correct to the best of my knowledge.

Respectfully Submitted,

_____        ___8/13/23_____
Jose Burgos-Rodriguez                 Date

Certificate of Service

I, Jose Burgos-Rodriguez, hereby swear under penalty of perjury that the foregoing was placed in the hands of the USP Atlanta Legal Mail Represntative on ___6/16/23_____ and that a true and correct copy of same was mailed via US Postal Service First Class mail to each defendant at their place of work (FSL Jesup). and to the US Attorney's Office, S.D.Ga in Savannah for Defendant United States at the same time.

Respectfully Submitted,

_____        6/13/23_____
Jose Burgos-Rodriguez                 Date

6

EXHIBIT 1



**U.S. Department of Justice**
Federal Bureau of Prisons
*Southeast Regional Office*
3800 Camp Creek Pkwy., SW., Bldg. 2000
Atlanta, Georgia 30331-6226

---

**CERTIFIED MAIL**
**7019 0700 0002 2851 5508**

May 8, 2023

JOSE BURGOS-RODRIGUEZ
Reg. No. 44526-069
USP ATLANTA
U.S. PENITENTIARY
P.O. BOX 150160
ATLANTA, GA 30315

**RE: Administrative Claim Number TRT-SER-2023-04363**

Dear Mr. Burgos-Rodriguez:

Your claim has been considered for administrative settlement under the Federal Tort Claims Act (FTCA), Title 28 United States Code (U.S.C.) § 2672 et seq., and authority granted by Title 28 Code of Federal Regulations (C.F.R.) § 0.172. Section 2672 of the FTCA delegates to each federal agency the authority to consider, determine and settle any claim for money damages against the United States for loss of personal property or injury caused by the negligent or wrongful act or omission of any employee of the agency while acting within the scope of his office or employment.

On September 14, 2022, at the Federal Correctional Institution (FCI) Jesup, Georgia, you allege that you received inadequate healthcare regarding hand/arm after you was injured by a machine in UNICOR. You further allege that your hand and arm was pulled into t-shirt processing machine and when you were taken to medical services, you claim staff failed to follow medical protocol. after you bent down to examine material. You claim that you expressed to medical during several sick calls that you were in pain and through administrative remedies. You are seeking $50,000.00 in compensation.

We have reviewed your claim along with records and reports from appropriate staff members. The investigation revealed that your injury occurred during the performance of your work assignment. Prison work-related injuries are covered exclusively by the Inmate Accident Compensation Program (IAC) as authorized by 18 U.S.C. 4126 and 28 C.F.R. 301. Through this program, inmates may be provided compensation if they are injured in accidents while they're performing prison work duties, as long as there is a resulting physical impairment existing at the time of release. The United States Supreme Court held in U.S. v. Demko, 385 U.S. 149 (1966), that this compensation system is an inmate's sole means of recovering for work-related injuries. The IAC program also considers the level of impairment brought by the injury, treatment of the injury as well as the level of medical treatment received following the injury. You should pursue the IAC procedures in order to obtain compensation for any prison work-related injuries. If you need information about the necessary steps and time frames to follow in order to file a claim, you should seek the assistance of staff in the Safety Department at your current facility.

Thus, your claim is denied. You are advised that if you are dissatisfied with our determination in these matters, you are afforded six (6) months from the date of the mailing of this communication within which to bring suit in the appropriate United States District Court.

Sincerely,

J. Latease Bailey-Close
Deputy Regional Counsel

EXHIBIT 2

TRULINCS  44526069 - BURGOS-RODRIGUEZ, JOSE ANG - Unit: JES-B-B

--------------------------------------------------------------------------------

FROM: 44526069
TO: Health Services/Servicios de Salud
SUBJECT: ***Request to Staff*** BURGOS-RODRIGUEZ, JOSE, Reg# 44526069, JES-B-B
DATE: 09/23/2022 12:02:09 PM

To: HSA Dr. Morgan & Medical Records
Inmate Work Assignment: Unicor

Dear Medical Staff:

    On Wednesday September 14, 2022, while working at my work detail in UNICOR, a t-shirt mechanic machine crushed and pulled my hand/arm. I was sent to medical where Nurse Drury saw me and just cleaned the wound, put a gauze and bandage, and prescribed Ibuprophene for 2 days. The hand/arm was not unmobilized. I notified him that it felt broken. He told me that he put me in for x-rays. On Friday, September 16, as x-rays were not taken, I went back for sick call at Medical, where Nurse Grimes saw me and told me to keep moving the hand and elbow and to keep waiting for the x-rays. She prescribed more Ibuprophene for 7 dyas. On Monday, September 19, 6 days without the situation taken care of properly, my Counselor, Mr. McGowan, called medical to verify on the status, they told him to communicate me to go back to sick call. I presented to Medical where Nurser Hanchey saw me and did a throughly check where she noticed discoloration and temperature difference at both hands and started the process to send me out to the hospital. I was in the hospital from like 12:15pm and came back to the FSL at around 3:50pm. My custody escort was Officer Smith. When we arrived ath the FSL he told me to go back to the unit for 4pm count and that after count I was going to be seen by the institution doctor or some medical staff. I was never saw again by medical on September 19. While at the hospital, I was not explained nor showed any x-ray or what was happening, just a nurse put on a "soft cast". I was not told for how much I was to have it on. On September 20, I went back to sick call to get more information and I was informed that the Medical Records from the trip got lost and they were trying to find it. Apparently nobody knows where they are. Medical Staff tried to located the records, even calling FSL Leutenant, FSL Control, and FCI Control, but nobody could find the records. Nurse Hanchey then told me she was contacting the hopsital to get a copy of the records faxed to medical so they could know what happened at the hospital and recommendations for treatment. As of today, September 23, no information has been provided to me.

I am requesting copies of all related medical records about this incident, including the September 14, 16, 19, and 20 sick calls and medical records from the hopstial trip on September 19, including copies of the x-rays. Also, an investigation on the process and chain of command of the medical trip record and why they have dissapearad.

BP-A0140.016          **INJURY REPORT - INMATE - PART 1** CDFRM
NOV 07
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

SEE DISTRIBUTION AND SPECIAL INSTRUCTION AT THE TOP OF THE NEXT PAGE FOR INMATE COPY

| 1. Institution FSL Jesup | 2. Name of Injured Burgos-Rodriguez | 3. Register Number 44526-069 |
|---|---|---|
| 4. Injured's Duty Assignment FSL Unicor 2 | 5. Injured's Duty Hours 7:45A - 3:30 pm | 6. Date and Time of Injury 9-14-22    9:45 Am |

7. Where Did Injury Happen (be specific as to location)
Automatic Screen Printer Machine in the back of factory in front the heat press machines.

8. Date and Time Injury Was Reported
9-14-22    9:45 Am

9. In Your Opinion, Was This Injury: (a) [X] Work Related    [ ] Non Work Related
   (b) [ ] Institution    [ ] Industry    [ ] Recreation    [ ] Program or Activity
       [ ] Other (explain)

| 10. To Whom Was Injury First Reported K. Lee | 11. Part of Body Involved (left knee, etc.) Right bottom forearm | 12. Kind of Injury (burn, cut, etc.) Scratch |
|---|---|---|

13. Injured's alleged Witnesses to Injury (staff and inmates)    Gallegos, Antonio #97457-020

14. Injured's Brief Statement As To How Injury Happened. Include Injured's Recommendation for
    Prevention. (Continue on additional blank sheets, if necessary.)
I while inmate Burgos-Rodriguez was applying more ink to the automatic screen print machine that was stopped, another inmate worker Navarro, George turned the machine back on and inmate Burgos-Rodriguez's arm got caught between the table and the screen, resulting in injury. Inmate Burgos-Rodriguez was sent to medical

● Injured's Signature and Date: _____ 3/27/23

15. Supervisor's Statement - Must Include: a. Job Training Record, b. Safety Equipment Provided,
    c. Whether Safety Equipment In Use, d. Whether Proper Guarding Used, e. Corrective Action Taken.
    (Continue on additional blank sheets, if necessary)
Inmate Burgos-Rodriguez #44526-069 came to me on 9-14-22 around 9:45 Am to report an injury to his right bottom forearm, I sent him to medical and logged the injury in the log book.

● Supervisor's Signature, Title and Date: _Kenneth Lee_    Fabric Worker Foreman 3/27/23

| 16. Medical Description of Injury Broken bone to handle | 17. This Injury Required: |
|---|---|
|  | a. [ ] No Medical Attention |
|  | b. [ ] Minor First Aid |
|  | c. [ ] Hospitalization - from _____ to _____ |
|  | d. [ ] Work Time Lost - from _____ to _____ |
|  | e. [✓] Other (explain) Trip to emergency room a few days |
|  | Total Lost Time Days: later for x-rays and cast. |

Record Copy - Inmate file; Copy - Safety Office; Copy - Inmate

*(This form may be replicated via WP)*                    Replaces BP-140.016, Part 1, of SEP 05

EXHIBIT 4

BP-A0140.016　　　　　　**INJURY REPORT - INMATE - PART 1**　CDFRM
NOV 07
**U.S. DEPARTMENT OF JUSTICE**　　　　　　　　　　　**FEDERAL BUREAU OF PRISONS**

SEE DISTRIBUTION AND SPECIAL INSTRUCTION AT THE TOP OF THE NEXT PAGE FOR INMATE COPY

| 1. Institution<br>FSL Jesup | 2. Name of Injured<br>Burgos-Rodriguez | 3. Register Number<br>44526-069 |
|---|---|---|
| 4. Injured's Duty Assignment<br>FSL Unicor 2 | 5. Injured's Duty Hours<br>7:45 Am - 3:30 pm | 6. Date and Time of Injury<br>9-14-22　9:45 Am |

7. Where Did Injury Happen (be specific as to location) Automatic Screen Printer machine in the **back of** factory **in front of the** heat press machines

| 8. Date and Time Injury Was Reported<br>9-14-22　　9:45 Am |
|---|

9. In Your Opinion, Was This Injury: (a) [X] Work Related　　| | Non Work Related

(b) | | Institution　　| | Industry　　| | Recreation　　| | Program or Activity

| | Other (explain)

| 10. To Whom Was Injury First Reported<br>K. Lee | 11. Part of Body Involved (left knee, etc.)<br>Right bottom forearm | 12. Kind of Injury (burn, cut, etc.)<br>Scratch |
|---|---|---|

13. Injured's alleged Witnesses to Injury (staff and inmates) Gallegos, Antonio 97457-020

14. Injured's Brief Statement As To How Injury Happened. Include Injured's Recommendation for Prevention. (Continue on additional blank sheets, if necessary.)

I while Inmate Burgos-Rodriguez was applying more ink to the automatic screen print machine that was stopped, another inmate worker Navarro, George turned the machine back on and inmate Burgos-Rodriguez's arm got caught between the table and the screen, resulting in injury. Inmate Burgos-Rodriguez was sent to medical.

● Injured's Signature and Date: 3/27/23

15. Supervisor's Statement - Must　Include: a. Job Training Record, b. Safety Equipment Provided, c. Whether Safety Equipment In Use, d. Whether Proper Guarding Used, e. Corrective Action Taken. (Continue on additional blank sheets, if necessary)

Inmate Burgos-Rodriguez # 44526-069 came to me on 9-14-22 around 9:45 Am to report an injury to his right bottom forearm. I sent him to medical and logged the injury in the log book

● Supervisor's Signature, Title and Date: K Lee　Factory Fabric Worker Supervisor 3-27-23

**NOTICE**

If you sustained an injury as a result of a work assignment, and feel you have some degree of impairment at the time of your release from federal custody, you may file a claim for Inmate Accident Compensation. Claims may not be filed until 30 days prior to release or transfer to a Community Treatment Center. Claims must be made within 60 days following release from the institution when circumstances preclude submission prior to release.

To file a claim you must contact the Institution's Safety Manager not less than 30 days prior to your release or transfer to a community Treatment Center. The Safety Manager will assist you in completing your claim and will arrange to have your injury medically evaluated.

Refusal of appropriate medical treatment or failure to file a claim prior to release or transfer to a Community Treatment Center may result in forfeiture of accident compensation benefits resulting from your injury. Failure to submit to a final physical examination in connection with an Inmate Accident Compensation Claim shall result in the forfeiture of all rights to compensation benefits and future medical treatment.

Record Copy - Inmate file; Copy - Safety Office; Copy - Inmate
(This form may be replicated via WP)　　　　　　　　Replaces BP-140.016, Part 1, of SEP 05

EXHIBIT 5

BP-A0140.016     **INJURY - LOST - TIME FOLLOW-UP - PART 2** CDFRM
NOV 07
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

NAME _Burgos - Rodriguez_          REG. NO. _44526-069_

RE: INJURY OF _9-14-22_
                 Date

1.   (Witnesses Statement) Use Additional Sheets of Plain Paper if Necessary,
Inmate Burgos-Rodriguez was applying ink to the automatic screen print machine
and inmate Navarro, George turned the machine on. His arm got caught
between the table and the screen.

RECOMMENDATION FOR PREVENTION _Workers be more cautious of their surroundings_
_Antero Bau_                            _97457-020_               _3-27-23_
       Witness Signature                Reg. No. or Title            Date

2.   (Department Head's Statement)
        I have no knowledge of this incident.

FOLLOW-UP OR CORRECTION ACTION TAKEN _____
    _D. Young_                          _Factory Manager_          _3/27/23_
         Department Head                        Title                 Date

3.   (Safety Manager's Comments)

    _AAO_                                                          _3/29/23_
         Safety Manager                                               Date

4.   (Safety Committee Review-Comments)
    Staff needs to ensure other inmates can't turn the machine on while he is
    being repaired.
    Committee agreed it was work related
    _AAO_                                                          _3/29/23_
      Associate Warden's Signature                                    Date

NAME _Burgos - Rodriguez_          REG. NO. _44526-069_

RE: INJURY OF _9-14-22_
                 Date

5.   |✓|The Institution Safety Committee has reviewed the report of your injury and is their
        opinion that your injury was work related.

     | | The Institution Safety Committee has reviewed the report of your injury and it is their
        opinion that your injury was not work related.

The final determination of the work relatedness of this injury is subject to review by the Inmate
Accident Compensation Committee upon the filing of a claim for Inmate Accident Compensation due to a
physical impairment resulting from the injury.

    _AAO_                                                          _3/29/23_
         Safety Manager                                               Date

Record Copy - Inmate file; Copy - Safety Office; Copy - Inmate

(This form may be replicated via WP)                    Replaces BP-140.016, Part 2, of SEP 05

José A. Burgos Rodriguez #44526-069
P.O. Box 150160
U.S.P. Atlanta
Atlanta, GA. 30315

U. S. District Court
801 Gloucester Street
Brunswick, GA 31520
C/O: Clerk of Court